

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 6, 2019

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: United States v. Miguel Caba, S3 16 Cr. 809 (VM)

Dear Judge Marrero:

  The Government respectfully submits this letter in advance of the sentencing hearing for defendant Miguel Caba, a/k/a "Miggs," which is scheduled for May 10, 2019 at 3:30 p.m. On October 29, 2018, pursuant to a plea agreement (the "Plea Agreement"), the defendant pled guilty before Magistrate Judge Netburn[1] to Count One of Indictment S3 16 Cr. 809 (VM), admitting his participation in the Rollin' 30s Crips racketeering conspiracy. As outlined in the Plea Agreement, under the United States Sentencing Guidelines (the "Guidelines"), the Guidelines range applicable to the defendant's conviction (the "Guidelines Range") is 121 to 151 months' imprisonment. Based on a consideration of the Guidelines and the other factors set forth in Title 18, United States Code, Section 3553(a), the Government respectfully submits that the offense warrants a sentence within the Guidelines Range.

## Background

### A. The Offense Conduct

  The charges in this case arose out of an investigation into a Bronx-based set of the Rollin' 30s Crips, a subset of the nationwide Crips street gang, which was conducted by the New York City Police Department ("NYPD") and the Department of Homeland Security, Homeland Security Investigations ("HSI"). (*See* Presentence Investigation Report ("PSR"), Dkt. No. 217, ¶¶ 13-20.) Caba was a ranking member of the Rollin' 30s, and in that role, he sold marijuana and participated in serious acts of violence against other members of opposing street gangs, all in furtherance of the Rollin' 30s gang.

---

[1] The plea was accepted by Your Honor on November 26, 2018 (*see* Dkt. No. 200).

Particularly relevant here, on May 14, 2015, the defendant—together with other Rollin' 30 members—drove to Davidson Avenue with the goal of shooting the leader of a rival Crips set based on Davidson Avenue. From inside the car, one of Caba's co-defendants, Walston Owen, indiscriminately fired multiple shots from a .40 caliber gun. In fact, Owen hit two people—neither of whom were his intended target, and neither of whom had anything to do with the gang dispute.

The first victim was a young woman ("Victim-1"), who heard the gunshots, saw someone collapse, and then tried to run away, only to be shot one time in the leg as she fled. The second victim was a 67-year-old gentleman ("Victim-2"); Owen shot Victim-2 three times, hitting Victim-2 in his shoulder, thigh, knee, and wrist. When the police arrived, Victim-2 was only semi-conscious, and could not even speak to the detectives. In the immediate aftermath of the shooting, as the defendant and the others fled in their car and, the defendant was seen leaning out the window, flashing gang signs associated with the Rollin' 30s. Thankfully, a number of other bystanders—whose lives had also been placed in jeopardy by the defendant and his co-conspirators—called 911. But for their quick actions, Victim-2 may not have survived. Both victims were taken to the hospital; Victim-2, in critical condition, was forced to undergo multiple surgeries over many weeks.

### B. The Guidelines Calculation

In the plea agreement, the parties stipulated that the applicable Guidelines offense level was 35, after a grouping analysis was performed which took into account both Caba's participation in an attempted murder of a rival gang member (Group One) and his participation in a conspiracy involving at least 40 kilograms but less than 60 kilograms of marijuana (Group Two). (PSR ¶ 5.) After taking into account acceptance of responsibility points, the overall offense level is 32. Because the defendant's Criminal History Category is I, his applicable Guidelines range is 121 to 151 months' imprisonment.

The Probation Office calculated the same Guidelines range, and recommends a Guidelines sentence of 121 months' imprisonment, basing this recommendation largely on the defendant's age and his limited criminal history, while also taking into account the serious acts of violence at issue here. (*See* PSR at 19-20.)

### Discussion

The Government respectfully submits that a sentence within the Guidelines Range is fully warranted in this case. The nature and circumstances of the offense and need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, all counsel in favor of a sentence within the Guidelines Range. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A).

There can be no question that the crime to which Caba pled was incredibly serious. The disregard he showed for the lives of others, and the serious bodily injury sustained by the victims of the drive-by shooting, is just one example of the havoc wreaked by Caba and his fellow Rollin'

30s members in the Bronx over the course of the conspiracy.[2] In fact, Victim-2 very recently passed away; the last few years of his life were marred by the injuries he suffered in the drive-by shooting. The Government understands that certain of Victim-2's family members, and Victim-1, intend to be present at Caba's sentencing.

Moreover, although Caba has no prior convictions, and thus no criminal history points, it must be noted that he is awaiting trial (together with a number of co-defendants) following his January 5, 2016 arrest relating to his involvement in (i) the December 24, 2015 murder of a 16-year-old boy, Justin Morris, and the non-fatal shooting of a 19-year-old in that same incident; and (ii) a series of armed robberies, some of which targeted take-out delivery persons, including knife-point and gun-point robberies.

Separate from his pending case, Caba has a fuller criminal history than the PSR reflects,[3] including a March 25, 2015 arrest criminal possession of a loaded .38 caliber Taurus revolver recovered from the glove compartment of a car which the defendant was driving. In that case, the .38 Taurus firearm was loaded with five bullets, one of which was a jacketed hollow-point round. Ten bags of marijuana were also recovered. DNA testing of that firearm established that the defendant was <u>included</u> as a possible contributor to the DNA found on the "front/back strap and grip." In fact, OCME calculated that it was 277 billion times more probable that that DNA came from Caba and an unknown contributor as compared to two unknown, unrelated persons. Caba was in custody awaiting trial on this arrest when the Government writted him into federal custody on the instant charges. While the Government understands that Caba was eventually acquitted on those charges at his state trial, had the defendant proceeded to trial in the instant case, the Government intended to prove up this incident as part of the racketeering conspiracy with which the defendant is charged. Thus, as relevant conduct, the defendant's involvement in this incident certainly should be considered by the Court in determining an appropriate sentence for the defendant here.

---

[2] As the Court is well aware, for instance, in another shooting perpetrated by co-defendant Richard Feliz, another member of the Rollin' 30s, an innocent bystander named Victor Chafla was murdered.

[3] Other sealed arrests or dismissed charges include a June 10, 2016 arrest effected while Caba was in custody at Rikers Island, on charges relating to an assault on a correctional officer. The Government understands these charges were later dropped. Caba also has a sealed arrest from September 19, 2015, for trespassing and refusing to disburse, followed by a September 20, 2015 arrest relating to grand larceny. In addition, the defendant's rap sheet reflects an order of protection which expired in 2013, filed by the woman believed to be the defendant's girlfriend. The Government has no additional information about those incidents.

The Government's practice is to bring any sealed or dismissed arrests of which it is aware to the attention of the Probation Office, to be included in the PSR; here, the Government mistakenly did not do so. Prior to submitting this letter, however, Government provided notice and re-produced the defendant's rap sheet to counsel, together with other supporting documentation.

The PSR also reports that Caba was disciplined in prison after being found in possession of contraband in his cell in September 2018, as well as refusing work in October 2017. (PSR ¶ 11.)

Caba had available to him many other options beyond a life of crime and violence. His mother is gainfully employed as a tax preparer, realtor, and mitigation specialist (PSR ¶ 55), and worked hard to support her children. Caba himself is in good health (PSR ¶¶ 65-70) and does not suffer from any drug addiction or mental health issues (PSR ¶71). He also clearly is capable of seeking legitimate employment, as he has some work history (PSR ¶ 77-78, 80) and had the option of continuing to work with his mother (PSR ¶ 79). But instead, Caba chose to associate himself with a violent street gang. While the Government agrees with the Probation Office that the Court should take into account the fact that Caba grew up "without a father, in unsafe schools, in a high-crime community," which was disadvantageous to the defendant, (PSR at 20) the defendant must also be held accountable for his role in perpetrating the dangers posed by that high-crime community.

A Guidelines sentence is also necessary to avoid unwarranted sentencing disparities. Co-defendants Steven Guzman and Jose Ayala were sentenced by the Court to 40 months' and 70 months' imprisonment, respectively. Neither Guzman nor Ayala were members of the Crips; rather, they sold drugs with Crips members, near Stratford Avenue. They both also pleaded guilty to section 841(b)(1)(C) offenses. The only other defendant to have been sentenced on this case, Lewis Turnbull, was a member of the Rollin' 30s, but was not charged with racketeering. Instead, Turnbull plead guilty only to his role in a narcotics conspiracy, and after pleading guilty to a (b)(1)(B) offense, he was sentenced to 75 months' imprisonment. (PSR ¶¶ 6-8.) And although Richard Feliz has not yet been sentenced, he pled guilty to charges relating to drug trafficking and brandishing a firearm, resulting in a stipulated Guidelines sentence of 27 years' imprisonment; during his plea, he also admitted his involvement in the Victor Chafla murder.[4]

In short, the defendant participated in distributing drugs and in acts of violence on behalf of the Rollin' 30s—conduct that rendered entire neighborhoods unsafe and unlivable for many law-abiding residents. A Guidelines sentence is necessary to ensure general deterrence, to provide just punishment for Caba's actions, and promote respect for the law.

---

[4] Feliz's plea is one in which the parties have agreed not to seek a sentence above or below his stipulated Guidelines range of 27 years, or to suggest in any way that the Probation Office or the Court consider a sentence other than his stipulated Guidelines range.

## Conclusion

      For the reasons set forth above, the Government respectfully submits that the Court should impose a term of incarceration within the Guidelines Range.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:   /s/
Jessica Fender
Anden Chow
Assistant United States Attorneys
(212) 637-2276 / 2348

cc:    Defense counsel (by ECF)