

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

AMERICA • ASIA PACIFIC • EUROPE

DRODY@SIDLEY.COM
+1 212 839 5951

May 3, 2019

**TO BE FILED UNDER SEAL**

**By Hand Delivery**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Seventh Floor
New York, NY 10007

Re:     **United States v. Miguel Caba, 16 Cr. 809 (VM)**

Dear Judge Marrero:

      We represent defendant Miguel Caba in the above-captioned case. We respectfully submit this letter for the Court's consideration in connection with Mr. Caba's sentencing, scheduled for May 10, 2019, following his guilty plea to a single count of conspiracy to commit racketeering in violation of 18 U.S.C. §1962(d). We respectfully request that this letter be filed **under seal**, due to the highly sensitive personal and health information contained herein.

      At the sentencing proceeding, the defense will respectfully ask this Court to impose a sentence of <u>less than</u> 103 months (approximately 8.5 years). We use that number as the starting point for our sentencing analysis, as opposed to the 121-month bottom of the agreed-upon Sentencing Guidelines range, to account for the 18 months that Mr. Caba spent in New York State custody awaiting trial for conduct that the Government agrees is part of this case and constitutes relevant conduct to Mr. Caba's offense of conviction.

      The defense submits that a sentence of less than 103 months is warranted in light of, among other things: Mr. Caba's role in the charged crime; his youth at the time of the offense (only 19 years of age); and other compelling factors regarding Mr. Caba's personal history and characteristics, including his history of employment and academic promise, notwithstanding his ███████████████████████████████████████ In short, unlike many defendants who come before this Court in similar cases, Mr. Caba has the intellect, the work ethic, the family support, and the personal fortitude to make it on the outside and lead a productive, law-abiding life. An appropriately lenient sentence by this Court can enable him to do just that.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Honorable Victor Marrero
Page 2

## APPLICABLE LAW

There is no legal presumption that a sentence within the applicable Sentencing Guidelines range is per se reasonable. Rather, the Supreme Court has made clear that, after determining the applicable Guidelines range, the sentencing court must "consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and to afford adequate deterrence; and the applicable Guidelines range. 18 U.S.C. § 3553(a).

"The overarching command of § 3553(a) is the Parsimony Clause, which instructs district courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *United States v. Davis*, No. 07 Cr. 727 (HB), 2008 WL 2329290, at *4 (S.D.N.Y. June 5, 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 89 (2007)) (internal quotation marks omitted). As discussed below, application of the statutory sentencing factors to this case demonstrates that a sentence of less than 103 months is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

## DISCUSSION

Mr. Caba pleaded guilty to a charge of RICO conspiracy. One of the underlying predicate acts involved a low-level marijuana distribution offense that does not affect the Guidelines analysis in this case. The other predicate act, and the core of the Government's charge against Mr. Caba, concerned a non-fatal drive-by shooting that occurred in the Bronx on May 14, 2015. Mr. Caba was 19 years old at the time, barely a man. He was not the leader or organizer of the activity; he did not supply the firearm that was used in the crime; and, most importantly, he was not the shooter.

But still, Mr. Caba participated in that crime knowingly and willfully. He got into the car that day with other Rollin' 30s gang members knowing that they had a gun and knowing that they intended to use it to try to shoot at a rival gang member. And despite knowing all of that, Mr. Caba still got into the car that day and went with them. That was the single worst decision of Mr. Caba's life—one he is still paying for now and will regret for the rest of his life.

At the time of the crime, Mr. Caba was just emerging from ███ childhood and adolescence, characterized by frequent moves, ███ ███. He was easy prey for a gang like the Rollin' 30s, which he had joined by his late teens. But Mr. Caba's worst moment should not and does not define him for all purposes and all time. In this case, he accepted responsibility for his actions, pleaded guilty to his crime, and is trying his best to put it behind him and look to the future.

# SIDLEY

Honorable Victor Marrero
Page 3

Mr. Caba is now twenty-three years old. Including state and federal custody, he has been in jail continuously for over three years, since January 2016, when he was just shy of 20. During that time he has grown, he has matured, he has taken courses and classes, and he has done his best to educate himself and prepare for a better life. Most importantly, Mr. Caba ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ He is a different person now than the 19-year old who got into the car that day in May 2015 to participate in that awful crime. He has a strong work ethic and a commitment to his family, his church, and his community. And something else: he has promise—he is someone who can actually make it successfully in the world outside of prison. Above all else, Mr. Caba is determined to make amends for his prior criminal conduct and to rejoin society as a positive and productive citizen.

In light of these and other factors under 18 U.S.C. § 3553(a) explained more fully below, we respectfully submit that a sentence of less than 103 months is appropriate in this case.

### I. OFFENSE CONDUCT, STIPULATED GUIDELINES RANGE, AND VARIANCE FOR TIME SERVED IN STATE CUSTODY

Mr. Caba has accepted responsibility for the crimes charged against him, including his participation in the illegal activities of the Rollin' 30s. Specifically, in his guilty plea, Mr. Caba admitted his association with the organization's distribution of marijuana and his participation in a drive-by shooting carried out by the Rollin' 30s on May 14, 2015, in which two people were injured. As a result of his plea to these offenses, there is no dispute that Mr. Caba's total offense level is 32, that he has zero criminal history points and is in Criminal History Category I, and that his stipulated Sentencing Guidelines range is 121-151 months. (*See* PSR ¶¶ 24-48, p. 19).

As indicated above, however, the defense respectfully submits that Mr. Caba should receive a variance, or adjustment, of 18 months from this Guidelines Range, pursuant to Section 3553(a), to account for time that Mr. Caba served in New York State custody while awaiting trial for conduct that was part of the charged RICO offense and relevant conduct to the instant case.

Specifically, on March 25, 2015, Mr. Caba was arrested along with several other individuals who were riding together in a car in the Bronx. At least one of the other individuals in the car was evidently a fellow Rollin' 30s gang member. Inside the car, officers found a loaded firearm; and Mr. Caba was ultimately indicted by the Bronx District Attorney's Office for possession of a loaded weapon. Mr. Caba was granted bail on that charge, however, and was released from custody. On January 5, 2016, approximately nine months later, Mr. Caba was arrested for alleged participation in a homicide in the Bronx. At the time of the homicide arrest, Mr. Caba's bail on the firearm case was revoked, and he was remanded into custody pending his trial in Bronx County Supreme Court on the firearm possession charge. Mr. Caba remained in New York State custody from January 2016 through September 2017, when he was acquitted at trial on the firearm possession charge in Bronx Supreme Court. Shortly after that acquittal, the Government writted Mr. Caba into federal custody to face the charges in the instant indictment.

**SIDLEY**

Honorable Victor Marrero
Page 4

The Government has agreed that Mr. Caba's arrest in March 2015 for possessing a firearm in a car in the Bronx with other Rollin' 30s members is relevant conduct to the RICO conspiracy charged in the instant case.[1]  Accordingly, the defense respectfully submits that the time Mr. Caba spent in state custody awaiting trial on those relevant conduct charges should be credited against his sentence in this case.

To be sure, this is not a situation where Mr. Caba had an undischarged term of imprisonment on a related state case—especially given that he was acquitted of the charge at trial—so the provisions of U.S.S.G. § 5G1.3 do not apply by their terms.  Yet it would be a perverse result if courts could not grant a variance from the Guidelines range for a *completed* term of imprisonment where Section 5G1.3 would otherwise allow such a variance had the term of imprisonment simply remained *undischarged*.  Fortunately, that is not the case.  Section 3553(a) gives this Court the power to grant Mr. Caba a variance of 18 months to account for the time he has already spent in state custody on what is effectively the same case.  Indeed, we respectfully submit that the Court is obliged to grant Mr. Caba the 18-month variance here, given the Court's duty to impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of the sentencing statute, including providing "just punishment" for the offense.

We urge the Court to grant such a variance or adjustment here, which would lower the bottom of the applicable Guidelines range to 103 months.

**II.    FACTORS WARRANTING A NON-GUIDELINES SENTENCE UNDER SECTION 3553(A)**

In addition to a variance for the time Mr. Caba spent in state custody awaiting trial on relevant conduct, there are other compelling reasons why the Court should grant Mr. Caba a non-Guidelines sentence and impose a term of imprisonment that is even lower than 103 months, pursuant to the factors set forth in 18 U.S.C. § 3553(a).  We address these reasons in turn below.

**A.    Mr. Caba's History and Characteristics—Section 3553(a)(1)**

*Personal History*

Mr. Caba's personal history and characteristics, including a ▮▮▮▮▮▮▮▮ full of instability, ▮▮▮▮▮▮ and other difficulties, weigh heavily in favor of a non-Guidelines sentence.  Since birth, Mr. Caba has experienced poverty, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  In the face of these challenges, and with the love and support of his mother and other family members, Mr. Caba has consistently tried his best to overcome the odds:  he showed great aptitude in school, secured employment at a young age to



---

[1] By contrast, the Government does not view the homicide charge still pending against Mr. Caba in the Bronx to be relevant conduct to this case.  Mr. Caba maintains his innocence in that case, and anticipates going to trial on those charges in Bronx County Supreme Court sometime after his sentencing in this federal case.

help support his family, and has a history of contributing positively to his community. During his imprisonment, Mr. Caba has continued working to improve his education, ███ and made strides to become a better person. Still only twenty-three years old, Mr. Caba is intelligent and motivated, acknowledges his past wrongs, and looks forward to becoming a productive member of society.

Mr. Caba was born on January 7, 1996 in the Bronx, New York, the eldest of his mother's three children. (PSR ¶ 55). His father, ███ an unemployed gang member, abandoned Mr. Caba's mother before his birth. Mr. Caba's father has been almost entirely absent from Mr. Caba's life ever since, and currently resides in the Dominican Republic. (PSR ¶ 57). Mr. Caba's mother, ███ just seventeen years old herself at the time Mr. Caba was born, was unable to provide for him financially and went to live with her mother during the last term of her pregnancy. Despite her own obvious hardships, Ms. ███ laudably continued her education and worked for years to become an accountant. (PSR ¶ 59). Nevertheless, Mr. Caba spent his early years without any father figure. (See Ex. A, Letter of ███). Mr. Caba recalls moving frequently during his youth because his family was often forced to stay with relatives during times of financial distress.

The void left by Mr. Caba's biological father was filled—for better or for worse—by his mother's two serious boyfriends. When Mr. Caba was four, his mother entered into a relationship with ███. (PSR ¶ 62). Together they had Mr. Caba's half-sister, ███ (PSR ¶ 58). For several years thereafter, they operated as a family unit. Mr. ███ largely assumed the role of Mr. Caba's father; they lived together, took family vacations together, and Mr. Caba called Mr. ███ ███ Mr. Caba's mother left Mr. ███ when Mr. Caba was ten years old. (PSR ¶ 62).

Mr. ███'s sudden absence triggered significant changes in Mr. Caba. As his mother and aunt describe in their letters to the Court, Mr. Caba—an honors student throughout his elementary school years—began to falter academically following the sudden departure of Mr. ███. Mr. Caba's grades began to drop and his behavior deteriorated. (See Ex. A, Letter of ███ Letter of ███ Ex. B; PSR ¶ 67). ███

# SIDLEY

Honorable Victor Marrero
Page 6



                A year after Mr. ▮▮▮'s departure, Ms. ▮▮▮ entered into a relationship with ▮▮▮ (PSR ¶ 63). Ms. ▮▮▮ nd Mr. ▮▮▮ have one child together, Mr. Caba's half-brother, ▮▮▮ (PSR ¶ 58). ▮▮▮ Mr. Caba was fourteen at the time. (PSR ¶ 63).

                *Education and Employment*

                Following her split from Mr. ▮▮▮, Ms. ▮▮▮ moved north of New York City, to ▮▮▮ New York, where she found work and affordable housing. (PSR ¶ 63). Mr. Caba, however, remained enrolled at a school in the Bronx—initially at the Theatre Arts Production Company School ("TAPCo")—so as to maintain consistency in his life and retain his friendships. To avoid a two-hour commute in each direction, Mr. Caba moved in with his aunt and uncle in the Bronx, with the hope that the living arrangements would provide Mr. Caba with some sense of family structure, and that his uncle would serve as a positive male role model. Soon after Mr. Caba moved in, however, his uncle began to complain about the costs of caring for Mr. Caba, criticizing Mr. Caba in particular for eating too much. Eventually, Mr. Caba's uncle asked him to leave, and, once again rejected by a father figure, Mr. Caba followed his family to Monsey and began bussing to TAPCo to complete his education. (PSR ¶ 63).

                Though the school itself was well-regarded, the area surrounding TAPCo was unsafe and gang-ridden, and served to compound the dysfunction Mr. Caba experienced in his personal life. ▮▮▮ (*See* Ex. E). As a young boy traveling long distances by himself, and with no existing gang affiliation, Mr. Caba was an easy target. His mother requested numerous safety transfers on his behalf, attached hereto as Exhibit E, but each was denied. ▮▮▮ ▮▮▮ led Mr. Caba to seek refuge in the Rollin' 30s, one of the local gangs.



Honorable Victor Marrero
Page 7

Joining the Rollin' 30s provided him stability, a sense of belonging, and the opportunity to connect with strong, male figures—something he had sorely missed in his own home. ▮▮▮▮▮ Although Mr. Caba found some measure of safety and support through his relationship with the gang, however, that association came with serious consequences—both for himself and for the victims of his crimes.

When Mr. Caba's mother forced him to withdraw from TAPCo due to her continued concerns for his safety, Mr. Caba began a home school regimen. (PSR ¶¶ 73-75). An education evaluation administered to assess his academic functioning at age 16 found that Mr. Caba was above average in most subjects. (*See* Ex. B). His home instruction records reveal that he received As and Bs almost across the board for the 2013-2014 and 2014-2015 school years, and would have passed the GED without studying had he not run out of time on the essay portion. (Ex. B). As many of his family and friends indicate in their letters to the Court, Mr. Caba had plans to attend college and eventually join his mother in her tax preparation business. (*See* Ex. A, Letter of ▮▮▮▮; Letter of ▮▮▮▮; Letter of ▮▮▮▮ Letter of ▮▮▮▮ PSR ¶ 81). Mr. Caba's bright future was cut short by bad choices that he now sorely regrets.

In addition to his academic ability, Mr. Caba consistently demonstrated a strong work ethic. From a young age, he obtained and maintained a number of jobs in order to help his mother support his siblings. As the PSR reflects, Mr. Caba balanced working at a nearby Chuck-e-Cheese restaurant, a Wendy's, and frequently alongside his mother in her tax preparation business. (PSR ¶ 77-81; Ex. A, Letter of ▮▮▮▮). Mr. Caba was widely regarded as a good employee and a hard worker. His former Manager at Chuck-e-Cheese, ▮▮▮▮, for example, wrote to the Court that, if not for Mr. Caba's arrest, Mr. ▮▮▮ had planned to promote Mr. Caba to a full-time position on a management track. He referred to Mr. Caba as a "phenomen[al] team player" and a "key asset" to the operation of his franchise, and said that, to this day, customers continue to ask for him. (*See* Ex. A, Letter of ▮▮▮▮).

During his incarceration, Mr. Caba has continued to demonstrate a strong work ethic, constantly working to rehabilitate himself and furthering his education so that he can lead a law-abiding life after prison. As the PSR notes, Mr. Caba is enrolled in a GED class, has completed a 26-hour course in "Lead by Example," as well as courses in anger management, parenting, construction, and car repair. (PSR ¶ 12). Upon his release, Mr. Caba has specific plans to join, and eventually take over, his mother's tax preparation business. (PSR ¶ 81).

*Faith, Family, and Community*

Despite the unconventional family structure in which Mr. Caba was raised, he has always valued family. The most obvious example of this is found in Mr. Caba's relationship with ▮▮▮ and ▮▮▮, his younger half-siblings for whom he cares deeply. In their letters to the Court in

# SIDLEY

support of Mr. Caba, many of his family members and friends attest to the fatherly role Mr. Caba assumed for ▉ and ▉—in effect, filling the role left vacant in his own childhood. (*See* Ex. A, Letter of ▉ Letter of ▉ Letter of ▉ Letter of ▉ Letter of ▉ Letter of ▉). These letters describe the myriad parental responsibilities Mr. Caba undertook for his siblings at an extraordinarily young age. Mr. Caba changed diapers, bathed his siblings, cooked dinner, and helped ▉ with her homework while his mother juggled two jobs. (*See* Ex. A, Letter of ▉ Letter of ▉; Letter of ▉). When Mr. Caba was not looking after ▉ and ▉ he could be found at his grandmother's apartment, attending to her needs, ensuring that she took her medication, and taking care of the more laborious chores around the house his grandmother was unable to complete ▉ (*See* Ex. A, Letter of ▉; Letter of ▉).

Mr. Caba's friends and family have attested to his character and made clear that he is a kind and decent person, ▉ Perhaps it was his own personal suffering that instilled within Mr. Caba a sensitivity to the needs of others, a trait identified in virtually every letter submitted on his behalf. ▉ (Ex. A, Letter of ▉). Mr. Caba's sister, ▉, echoed similar praise of her brother in noting his uncanny ability to uplift the human spirit. She has cried often since Mr. Caba's arrest, and described in detail the void he has left: as her older brother and "best friend," Mr. Caba was—and is still to this day—▉'s main confidant and strongest supporter. She quoted Mr. Caba's oft-provided advice to try her best and "let God do the rest." (Ex. A, Letter of ▉).

Indeed, religious faith has been a consistent theme in Mr. Caba's life. (*See* Ex. A, Letter of ▉; Letter of ▉; Letter of ▉; Letter of ▉; Letter of ▉; Letter of ▉; Letter of ▉). Before his incarceration, Mr. Caba attended church with his family every Sunday and has been a member of various church groups throughout his childhood and early adult years. Apart from the religious, Mr. Caba's involvement with these groups provided for his regular involvement in community service efforts around the neighborhood, which included feeding and clothing the homeless. (*See* Ex. A, Letter of ▉; Letter of ▉; Letter of ▉). Equally noteworthy, in speaking with Mr. Caba's mother, defense counsel learned that Mr. Caba assisted the Hasidic Jewish community of ▉ shut off their electronic devices every Sabbath as a matter of practice, and that he routinely helped the elderly residing in his apartment complex with their groceries.

In summary, Mr. Caba's personal history and characteristics weigh strongly in favor of a non-Guidelines sentence of less than 103 months. Pursuant to Section 3553(a)(1), the hardships that Mr. Caba has endured—and the good deeds and small acts of kindness that he has consistently performed for others notwithstanding his own troubles—provide a compelling basis for this Court

to exercise great leniency in imposing sentence. Such leniency would not be a "pass" for Mr. Caba's criminal conduct, but a recognition of his other qualities—an acknowledgement that there can be, and are in this case, persuasive mitigating factors regarding even a former gang member like Mr. Caba. Here, Mr. Caba's personal history and characteristics warrant a reduced sentence of less than 103 months that would enable him to return to society when he is still young enough to live a long and productive, law-abiding life.

### B. Punishment, Promotion of Respect for the Law, and Deterrence—Section 3553(a)(2)

In Mr. Caba's case, the major considerations embodied in Section 3553(a)(2)—promotion of respect for the law, punishment of the defendant, specific deterrence, general deterrence, and protection of the public from the defendant—also militate in favor of a sentence below the Guideline range. [REDACTED] The purpose of raising these issues is not to make excuses for Mr. Caba's actions, but to explain their origin. Indeed, a sentence that does not take into account "the real conduct and circumstances involved" in the offense and results in an unduly harsh term of imprisonment "may work to promote not respect, but derision, of the law." *Gall v. United States*, 552 U.S. 38, 54 (2007) (quoting the district court's sentencing decision in *United States v. Gall*, 374 F. Supp. 2d 758, 763–64 (S.D. Iowa 2005)).

Moreover, there is no need for a sentence within the Guidelines range to achieve general deterrence in this case. A sentence below 103 months, which is warranted for the reasons set forth herein, would not lead anyone familiar with the circumstances of Mr. Caba's offense to conclude that he was being inadequately punished, that the law was entitled to less respect as a result, or make his crimes seem attractive. There also is no need for a sentence of ten years or more to ensure that Mr. Caba is specifically deterred from engaging in further criminal conduct. Mr. Caba has no prior criminal convictions but nevertheless has been incarcerated since January 2016 on conduct that is part of the offense in this case. The consequences he has suffered these past three years alone are certain to motivate him not to resume any involvement with the Rollin' 30s upon his release—notwithstanding that he has already dissociated himself from the group in any event. At age 23, Mr. Caba has now spent well more than ten percent of his life imprisoned on this case. Accordingly, a non-Guideline sentence, even one below 103 months, is more than severe enough punishment to deter Mr. Caba from participating in criminal activity, ever again.

# SIDLEY

Honorable Victor Marrero
Page 10

## CONCLUSION

Mr. Caba participated in a terrible crime when he was only 19 years old. And he has already been imprisoned for conduct related to that crime for the past three years. He now comes before the Court and most humbly asks for the utmost lenience in determining the remainder of the time that he must serve for the offense he committed so long ago. Now 23, Mr. Caba is still a young man. He is intelligent, hardworking, and devoted to his family. In short, he has real promise. Unlike many other defendants, he has the ability, the drive, and the support to actually become a contributing and productive member of society. His crimes were the all-too predictable result of ███████████████████████████████████████████ These left him vulnerable to straying into gang membership and unlawful behavior. He made bad decisions that hurt his fellow citizens—which Mr. Caba truly regrets, and for which he is sincerely sorry. Mr. Caba's hope is that the Court will give him the chance to reenter society as young man, so that he can make amends for his crimes, give back to his family and community, and fulfill his great promise. We most respectfully urge the Court to give Mr. Caba that chance.

Respectfully submitted,

/s/ David M. Rody
_____

David M. Rody
Alexa Poletto
Zainab R. Qureshi

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839–5300
Facsimile: (212) 839–5599

*Attorneys for Defendant Miguel Caba*

cc:   Jessica Fender, Assistant United States Attorney
      Anden Chow, Assistant United States Attorney
      Drew Skinner, United States Probation Officer